**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **BERKELEY B. HUTCHINSON, IV,**<br>**Plaintiff,**<br>**v.**<br>**MONMOUTH COUNTY CORRECTIONAL INSTITUTION, *et al.*,**<br>**Defendants.** | **Case No. 25–cv–17781–ESK–MJS**<br><br>**OPINION** |

**KIEL, U.S.D.J.**

**THIS MATTER** comes before the Court on *pro se* plaintiff Berkeley B. Hutchinson's civil rights complaint filed pursuant to 42 U.S.C. § 1983 (Complaint). (ECF No. 1.) Because Hutchinson has been granted *in forma pauperis* status, I must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915(e)(2). For the following reasons, I will allow the Complaint to proceed in part.

## I. FACTS AND PROCEDURAL HISTORY

Hutchinson is a convicted and sentenced state prisoner at Northern State Prison. (ECF No. 12 p. 1.) At the time of the events that gave rise to the Complaint, Hutchinson was a pretrial detainee at Monmouth County Correctional Institution (MCCI). (ECF No. 1 p. 8.)

Hutchinson alleges that he was housed in the infirmary at MCCI from March 26, 2025, until June 13, 2025, despite not suffering from a physical or mental illness. (*Id.* p. 8.) This resulted in Hutchinson receiving only one hour out of his cell each day and prevented him from conducting research related to

his ongoing criminal proceedings, as individuals in the infirmary are not permitted to use the law library and do not have access to a computer. (*Id.*)

Hutchinson, an above-knee amputee who uses a prosthetic leg, states that, while in the infirmary, he was not provided the lightweight sneakers that help secure his foot and support him while walking. (*Id.*) Hutchinson entered MCCI with these sneakers and had a note in his file that he was required to wear them at all times. (*Id.*) Instead, Hutchinson was given the standard shoes provided to detainees. (*Id.*) These were not supportive, impaired his ability to stand, and caused an uneven gait, resulting in pain in his hip. (*Id.*) After leaving the infirmary, Hutchinson was provided with heavy work boots that helped him stand but damaged his prosthetic. (*Id.*)

Hutchinson asserts that, upon release from the infirmary, he was improperly housed in a "Pod" for individuals with mental health challenges and/or drug addiction instead of the dormitory-style housing he had been placed in previously. (*Id.*) Hutchinson alleges that facility documents would show that he was not supposed to be housed in a Pod because "of multiple obstacles like stairs and shower accessibility." (*Id.*)

Additionally, Hutchinson states that, throughout his confinement in MCCI, he was not receiving the medication that had been prescribed to him prior to his detainment. (*Id.*) He does not specify the medication or its purpose. (*Id.*)

Hutchinson also alleges that he was targeted by MCCI corrections officers because Monmouth County Sheriff Correctional Officer Chris Williams is the brother of the accuser in his criminal case.[1] (*Id.*) Hutchinson asserts that Officer Puiu twice mimicked Hutchinson's gait, encouraging other inmates to laugh at and belittle him. (*Id.* p. 9.) Hutchinson similarly reports that Officer

[1] Hutchinson does not name Officer Williams as a defendant.

Jordan made several offensive jokes and comments about Hutchinson's disability in front of other inmates, made a racist joke when she said "I'll be black" instead of "I'll be back," and said Hutchinson could not be a houseman because he is "a cripple and [has] a peg leg." (*Id.*) Additionally, on August 21, 2025, Officer Jordan did not allow Hutchinson to retrieve his prosthetic from where it was charging after the afternoon count had cleared. (*Id.*)

Hutchinson further alleges that Officer CarMac told other MCCI inmates fabricated stories regarding the criminal case against him and used a computer to show other inmates housed in Hutchinson's Pod the charges he faced, in an attempt to "entic[e]" the inmates into harming him. (*Id.*) On July 8, 2025, Officer CarMac allegedly gave other inmates instructions to harm Hutchinson through head nods and other gestures and told one inmate to "[w]atch [his] booty hole around [Hutchinson]." (*Id.*)

It is not clear from the Complaint whether Hutchinson alleges he was harmed by another inmate because of Officer CarMac's actions. But, on June 23, 2025, Hutchinson alleges he was attacked in his cell by another inmate and was subsequently moved to "J-Pod," MCCI's "lockup," where he was told by a sergeant that he would receive a "double sentence" if he went to Court Line, after which Hutchinson agreed to a seven-day sentence for fighting. (*Id.*) Hutchinson was held in J-Pod for three days, during which he was not able to shower because there was no handicap accessible shower, did not have a change of clothes, received no recreation time, and was not allowed to call his family or fiancé, despite inmates typically being allowed one phone call when in lockup. (*Id.*) Further, Hutchinson was not able to charge his prosthetic during that time, which he asserts "can be damaging" to the prosthetic. (*Id.*) After those first three days, Hutchinson was moved to the infirmary to finish his seven-day sentence, at which point he was able to charge his prosthetic. (*Id.*)

Hutchinson asserts that the conditions he experienced while in lockup were "part of the plot against" him by Officers CarMac, Jordan, and Puiu (together, the Officer Defendants). (*Id.*)

Because of the conditions of his confinement and lack of proper care by the medical department at MCCI, Hutchinson alleges his prosthetic has stopped working. (*Id.* p. 13.)

## II. LEGAL STANDARD

The Prison Litigation Reform Act (PLRA) requires a district court to *sua sponte* screen a civil complaint filed by plaintiffs proceeding *in forma pauperis* for cognizable claims and to dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant immune from suit. 28 U.S.C. § 1915(e)(2).

To survive a *sua sponte* screening for failure to state a claim, a complaint must allege "sufficient factual matter" to show that the plaintiff's claims are facially plausible. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n. 3 (3d Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"The Court must accept all facts in the complaint as true, draw all reasonable inferences in the prisoner's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim." *Durham v. Kelley*, 82 F.4th 217, 223 (3d Cir. 2023). Moreover, "[c]omplaints filed *pro se* should be construed liberally and held to 'less stringent standards than formal

pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

## III. DISCUSSION

Hutchinson asks the Court to terminate the employment of the Officer Defendants, seeks compensatory damages of $20,000 from each, and seeks $30,000 each from the MCCI Administration and the MCCI Medical Department.[2] (ECF No. 1 p. 5.)

As an initial matter, federal courts do not "have the authority to terminate the employment of a state employee." *Blocker v. Charelton*, No. 24–cv–5677, 2024 WL 3824023, at *1 (D.N.J. Aug. 15, 2024) (cleaned up) (collecting cases). I will therefore dismiss with prejudice Hutchinson's request to terminate employment of the Officer Defendants. *See id.* (dismissing claim seeking to terminate an officer and sergeant who were employees at a county jail); *see also Farrell v. Wright*, No. 26–cv–2972, 2026 WL 1493951, at *4 n. 7 (E.D. Pa. May 27, 2026) ("The Court is not empowered to fire or reprimand a defendant as a remedy under § 1983.").

### A. <u>Claims Against MCCI</u>

Hutchinson seeks to hold MCCI accountable for actions of its employees related to unlawful confinement, failure to meet medical needs, and officer misconduct. (ECF No. 1 pp. 3, 4.)

---

[2] The Complaint names as the first defendant "Monmouth County Correctional Institution (Administration/Medical)," also stylized as "Monmouth County Correctional Institute [sic]" with an "official position" of "Administration/Medical Department." (ECF No. 1 pp. 1, 3.) I understand the Complaint to be asserting claims against MCCI, not individual departments. To the extent Hutchinson intends to assert claims against individual departments, he must name them accordingly in an amended complaint. Hutchinson should be aware that the § 1983 analysis is unlikely to change even if a department is a named defendant. *See Samuels v. Health Dep't*, No. 16–cv–1289, 2017 WL 26884, at *2 (D.N.J. Jan. 3, 2017) (finding a prison's medical department is not a "person" under § 1983).

MCCI is not a proper defendant under § 1983. A plaintiff may have a cause of action under § 1983 for certain violations of his constitutional rights committed or caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). A county jail is not a "person" subject to such an action. *Hutton v. Dep't of Homeland Sec.*, No. 17–cv–13393, 2018 WL 734666, at *2 (D.N.J. Feb. 5, 2018). Therefore, Hutchinson's § 1983 claims against MCCI are dismissed with prejudice.

Because the Complaint is filed *pro se*, I will construe Hutchinson's allegations as also asserting a claim under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131–65.[3] The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. County jails are public entities for purposes of the ADA, and its protections extend to individuals detained within them. *See Hetsberger v. Essex Cnty. Corr.*, No. 21–cv–9322, 2021 WL 4727476, at *1 (D.N.J. July 19, 2021) (citing *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998)).

"To state a claim for disability-based discrimination, a plaintiff must show that: (1) he is a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefits of the services, programs, or other activities for which a public entity is responsible, or was otherwise subjected to discrimination by a public entity; (4) by reason of his disability." *Montanez v.*

[3] The ADA does not create a private cause of action against individuals, *see Boggi v. Med. Rev. and & Accrediting Council*, 415 F. App'x 411, 415 (3d Cir. 2011) (holding individual defendants cannot be sued in their individual capacities under the ADA); *Emerson v. Thiel Coll.*, 296 F.3d 184, 190 (3d Cir. 2002) (holding there was no individual liability under Titles I, II, or III of the ADA); as such, I only consider ADA claims against MCCI, not the Officer Defendants.

*Price*, 154 F.4th 127, 146 (3d Cir. 2025). Where compensatory damages are sought, a plaintiff must also show intentional discrimination under, at minimum, a deliberate indifference standard. *See Durham*, 82 F.4th at 225.

Hutchinson provides sufficient facts to allege that MCCI violated his rights under the ADA when it placed him in J-Pod without providing access to a handicap-accessible shower and without permitting Hutchinson to charge his prosthetic.

First, Hutchinson sufficiently alleges he is a qualified individual with a disability. *See Palmer v. Watterson*, No. 20–cv–00010, 2021 WL 5990873, at *5 (W.D. Pa. Nov. 9, 2021) (finding foot amputee was a qualified individual under the ADA), report and recommendation adopted, 2021 WL 5989368 (W.D. Pa. Dec. 16, 2021). Second, both allegations consist of a deprivation of a reasonable accommodation. *See Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 289 (3d Cir. 2019) ("[T]he phrase 'services, programs, or activity' . . . is 'extremely broad in scope and includes anything a public entity does.'" (quoting *Disability Rts. N.J., Inc. v. Comm'r, N.J. Dep't of Hum. Servs.*, 796 F.3d 293, 301 (3d Cir. 2015))); *see also Durham*, 82 F.4th at 226 ("Refusing to make reasonable accommodations is tantamount to denying access.").

Third, Hutchinson sufficiently demonstrates that he was deprived of the accommodations "by reason of [Hutchinson's] disability," as the ADA only requires "but-for" causation, *Durham*, 82 F.4th at 226, and each accommodation, inextricably linked with his disability, was enjoyed by Hutchinson before being placed in J-Pod. *See Furgess*, 933 F.3d at 291 ("As to causation, the sole cause of [the plaintiff's] deprivation of a shower was his disability. . . . A prisoner's misconduct does not strip him of his right to reasonable accommodations, and a prison's obligation to comply with the ADA . . . does not disappear when inmates are placed in a segregated housing unit.").

Further, for purposes of this screening, Hutchinson has plausibly alleged that these deprivations were the result of intentional discrimination. Intentional discrimination can be established by a showing of deliberate indifference. *See Durham*, 82 F.4th at 226. Deliberate indifference can be satisfied where there is "(1) knowledge that a federally protected right is substantially likely to be violated . . . and (2) failure to act despite that knowledge." *Id.* (citing *Haberle v. Troxell*, 885 F.3d 170, 181 (3d Cir. 2018)).

Hutchinson states that he was unable to charge his prosthetic even though "the whole facility knows [his] charging schedule," which was "approved by [MCCI] administration and on record." (ECF No. 1 p. 9); *see also Durham*, 82 F.4th at 226 (finding deliberate indifference where prison officials were aware the plaintiff needed a cane and the plaintiff was repeatedly denied the cane and shower accommodations). Notably, Hutchinson's assertions go beyond deliberate indifference, alleging that the conditions while he was in lockup were due to his being targeted by the Officer Defendants because of their relationships with Officer Williams. (ECF No. 1 p. 9); *see also Durham*, 82 F.4th at 226 (finding intentional discrimination was sufficiently alleged where plaintiff stated the denials of his cane and an accessible shower were based on officers saying that he "complained a lot" and was an "asshole"). Without deciding on the sufficiency of this allegation of animus, I find that Hutchinson's Complaint sufficiently states facts alleging deliberate indifference.

Hutchinson's remaining allegations do not provide sufficient facts to state an ADA claim. Hutchinson does not state that his confinement in the infirmary or his not receiving certain medications were related to his disability. *See Brown v. Deparlos*, 492 F. App'x 211, 215 (3d Cir. 2012) (affirming dismissal of county prisoner's claim under the ADA where the complaint failed to demonstrate "that the alleged inadequate or improper medical care he received was because of a disability"). Nor does he clarify whether his placement in a

Pod actually resulted in loss of an accommodation or other service or program. While Hutchinson indicates the Pod did not have accessible showers and had stairs, he does not indicate that this actually prevented him from showering or otherwise accessing any service, program, or activity. (*See* ECF No. 1 p. 9.) Similarly, when Officer Jordan delayed Hutchinson from retrieving his prosthetic, Hutchinson was able to use crutches, and there is no suggestion that the delay lasted for a significant period or was a repeated occurrence. (*See id.*) Hutchinson also alleges that he was told he could not be a houseman because of his disability, but he does not state that he was actually impeded from receiving a work assignment. (*See id.*) These facts alone do not allege exclusion from a service, program, or activity.

Regarding Hutchinson's footwear, even if the four *prima facie* elements could be met, Hutchinson does not allege that prison officials were aware that the shoes he received were harmful to him and/or his prosthetic and therefore cannot meet the deliberate indifference standard required for claims seeking compensatory damages. *See Durham*, 82 F.4th at 226.

For the foregoing reasons, I will permit the ADA claims based on shower access and Hutchinson's ability to charge his prosthetic while in J-Pod to proceed. All other ADA claims are dismissed without prejudice for failure to state a claim.

### B. Officer Defendants

Against the Officer Defendants, Hutchinson asserts claims of cruel and unusual punishment and a failure to comply with officer protocols and guidelines.[4] (ECF No. 1 pp. 4, 7.) Hutchinson seeks damages related to the

[4] To the extent Hutchinson intends to allege that a failure to follow MCCI protocol or guidelines violated his rights, "departure from the policies and procedures outlined in the [correctional] facility's handbook does not, in and of itself, amount to a constitutional violation actionable under § 1983." *Laufgas v. Speziale*, No. 04–cv–1697, 2006 WL 2528009, at *9 (D.N.J. Aug. 31, 2006).

cruel and unusual punishment, mental and physical abuse, his development of post-traumatic stress disorder (PTSD), and the Officer Defendants "keeping [Hutchinson] away from [his] case." (*Id.* p. 5.)

"A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Hutchinson does not provide facts that demonstrate any of the Officer Defendants were involved with his stay in the infirmary and subsequent loss of access to the law library, placement in the Pod, lack of proper footwear, or access to medication. Nor does the Complaint allege the Officer Defendants were at any point physically abusive towards Hutchinson. While Hutchinson states that Officer CarMac intended to "entice" other inmates to harm him (ECF No. 1 p. 9), he does not connect that enticement to any subsequent attack or injury.

Hutchinson's remaining claims, for which he does allege personal involvement by the defendants, are (1) Officer Jordan delaying Hutchinson from retrieving his prosthetic, (2) discriminatory conditions while in J-Pod, (3) verbal harassment by each of the Officer Defendants, and (4) his development of PTSD.

As a pretrial detainee, Hutchinson's challenges to the conditions of his confinement must be prosecuted under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment's protection against cruel and unusual punishment. *See Burton v. Kindle*, 401 F. App'x 635, 637 (3d Cir. 2010) ("[S]entenced prisoners are protected from only punishment that is 'cruel and unusual,' while pretrial detainees are protected from any punishment." (citing *Hubbard v. Taylor*, 399 F.3d 150, 166–67 (3d Cir. 2005))). Therefore, a prison official's failure to provide "minimally civil conditions of confinement" violates a pretrial detainee's right not to be punished

without due process of law. *Pfeiffer v. Hutler*, No. 12–cv–1335, 2012 WL 4889242, at *3 (D.N.J. Oct. 12, 2012) (citing *Reynolds v. Wagner*, 128 F.3d 166, 173, 174 (3d Cir. 1997)). To sustain this claim, a plaintiff must make (1) an objective showing that the conditions were sufficiently serious, and (2) a subjective showing that the defendants acted with deliberate indifference. *See Martinez v. Camden Cnty. Jail*, No. 18–cv–14641, 2018 WL 6191889, at *4 (D.N.J. Nov. 28, 2018) (citing *Hubbard*, 399 F.3d at 158).

Hutchinson fails to sufficiently allege that the conditions of his confinement while in J-Pod violated his Due Process rights. Courts have consistently held that being deprived of a shower, recreation time, and phone time for three days does not amount to a constitutional violation. *See, e.g.*, *Hargrove v. Santiago*, No. 14–cv–4754, 2017 WL 2869504, at *5 (D.N.J. July 5, 2017) (finding no constitutional violation where pretrial detainee was only permitted to shower once in ten days and was prohibited from using the telephone); *Hill v. Chester Cnty. Prison*, No. 25–cv–5393, 2026 WL 624162, at *4 (E.D. Pa. Mar. 5, 2026) (finding no violation where pretrial detainee was not permitted to shower or exercise in the recreation yard for four days); *see also Autery v. Moore*, No. 22–cv–4015, 2023 WL 2390670, at *6 (E.D. Pa. Mar. 7, 2023) (collecting cases).

Hutchinson also fails to sufficiently allege that Officer Jordan's delay in allowing him to retrieve his prosthetic amounts to a sufficiently serious condition. Hutchinson admits that he was able to use crutches during the brief period that he was delayed in retrieving his prosthetic from where it was charging during count and does not allege that this delay was a repeated occurrence. (*See* ECF No. 1 p. 9.) While use of a prosthetic may generally be a serious medical need, an extension of the daily charging time during which Hutchinson had access to alternative accommodation in the form of crutches,

absent more, is not sufficiently serious to state a claim under the Fourteenth Amendment.

The verbal abuse and harassment, as alleged by Hutchinson, are abhorrent, but "[a]llegations of verbal abuse or threats, unaccompanied by injury or damage, are not cognizable under § 1983, regardless of whether the inmate is a pretrial detainee or sentenced prisoner." *Anderson v. DaCosta*, No. 10–cv–5835, 2011 WL 2223713, at *21 (D.N.J. June 1, 2011); *see also Ramziddin v. Monmouth Cnty. Sheriff Dep't*, No. 09–cv–4829, 2010 WL 1752540, at *14 (D.N.J. Apr. 30, 2010) (collecting cases). As discussed previously, Hutchinson does not allege facts demonstrating the Officer Defendants were physically abusive towards him or that their actions physically harmed him, directly or indirectly. *See Pfeiffer*, 2012 WL 4889242, at *4 (permitting harassment claim to proceed where officer verbally abused pretrial detainee, disclosed his sex crime charges to other inmates, and paid another inmate to physically assault the plaintiff).

This assessment does not change even accepting as true that the Officer Defendants' actions resulted in Hutchinson developing PTSD. The PLRA requires plaintiffs seeking compensatory damages to demonstrate physical injury to recover for mental or emotional harm. *See Mitchell v. Horn*, 318 F.3d 523, 533 (3d Cir. 2003). While PTSD may be a serious medical condition, a bare statement alleging PTSD alone is insufficient to establish a physical injury under the PLRA, absent any facts demonstrating corresponding physical harm. *Cf. White v. United States*, No. 25–cv–1883, 2026 WL 127943, at *2, 3 (3d Cir. Jan. 16, 2026) (finding exacerbation of PTSD did not meet the PLRA's "physical injury" requirement for Federal Tort Claims Act claims); *J.B. ex rel. J.B. v. Greater Latrobe Sch. Dist.*, No. 21–cv–690, 2023 WL 5510365, at *9 (W.D. Pa. Aug. 25, 2023) (finding PTSD alone was not sufficient to establish physical injury for student's § 1983 claim brought against the student's school district).

Therefore, I will dismiss the claims related to verbal abuse and PTSD for failure to state a claim.

Hutchinson's allegations against the Officer Defendants are therefore dismissed without prejudice for failure to state a claim.

## IV. CONCLUSION

For the reasons stated above, I will allow Hutchinson to proceed with his ADA claims based on his access to a shower and the ability to charge his prosthetic while in lockup; all other ADA claims are dismissed without prejudice. I will dismiss with prejudice Hutchinson's § 1983 claims against MCCI and claims seeking termination of employment. All other § 1983 claims I will dismiss without prejudice. 28 U.S.C. § 1915(e)(2)(B)(ii). An appropriate Order accompanies this Opinion.

*/s/ Edward S. Kiel*
**EDWARD S. KIEL**
UNITED STATES DISTRICT JUDGE

Dated: September 24, 2026